**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


| | |
|---|---|
| EDHER LOPEZ-ARAISA,<br><br>            Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>            Respondent. | No.    20-72860<br><br>Agency No. A214-014-476<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 9, 2023[**]
Phoenix, Arizona

Before: HAWKINS, GRABER, and CHRISTEN, Circuit Judges.

Edher Lopez-Araisa petitions for review of a Board of Immigration Appeals'

(BIA) order dismissing his appeal from an Immigration Judge's (IJ) decision

denying his motion to terminate and his applications for asylum, withholding of

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      [**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

removal, and protection under the Convention Against Torture (CAT).  Our jurisdiction arises under 8 U.S.C. § 1252, and we deny in part and dismiss in part the petition for review.

1.  Citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Lopez-Araisa argues that the agency erred by denying his motion to terminate his removal proceedings because his defective Notice to Appear (NTA) deprived the agency of jurisdiction to enter a removal order.  Though Lopez-Araisa's NTA did not provide a time or date, the Department of Homeland Security later sent Lopez-Araisa notices of hearing that specified the time and date of his removal proceedings.  Lopez-Araisa's argument is therefore foreclosed by our decision in *United States v. Bastide-Hernandez*, which held that "the failure of an NTA to include time and date information does not deprive the immigration court of subject matter jurisdiction."  39 F.4th 1187, 1188 (9th Cir. 2022) (en banc), *cert. denied*, No. 22-6281, 2023 WL 350056 (U.S. Jan. 23, 2023).

2.  We dismiss the petition for review to the extent that it challenges the denial of asylum and withholding of removal because Lopez-Araisa did not dispute before the BIA the IJ's adverse credibility finding, untimeliness determination, or finding of a lack of corroboration, and the BIA considered those issues waived as a result.  Lopez-Araisa argues that we can reach these issues nevertheless because

the BIA, citing *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994), stated that it agreed with the IJ's reasoning and adopted and affirmed the IJ's decision. When, as here, the BIA explicitly declines to reach an unexhausted issue, we interpret the BIA's citation to *Burbano* to incorporate only the portions of the IJ's decision that the BIA decided on the merits. *See Abebe v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc) (considering exhaustion requirement satisfied when the BIA adopted an IJ's decision in full "without saying that it limited the scope of its decision to [certain grounds]" because "[t]he BIA is presumably aware of its ability to decline to review an argument when a petitioner has not properly raised the argument on appeal to the BIA"); *id.* (holding that we have jurisdiction over an unexhausted issue "[w]hen the BIA has *ignored* a procedural default" (emphasis added)). Because we lack jurisdiction to consider these unexhausted issues, 8 U.S.C. § 1252(d)(1), we dismiss these parts of the petition.

3. Substantial evidence supports the agency's denial of Lopez-Araisa's CAT claim. Lopez-Araisa argued before the agency that country conditions reports establish that police in Mexico have committed atrocious crimes and work in tandem with drug cartels. But "generalized evidence of violence and crime in Mexico is not particular to [a] [p]etitioner[] and is insufficient to meet [the CAT] standard." *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010). Lopez-

3

Araisa failed to meet his burden of showing that he in particular has been tortured in Mexico or would be tortured there if he returns. *See* 8 C.F.R. § 208.16(c)(2) & (3)(i). Notably, his maternal aunt continued to reside in Tijuana for years without incident after the alleged kidnapping, which significantly undercuts his claim that he would more likely than not be tortured if he returns to Mexico.

The stay of removal remains in place until the mandate issues.

**PETITION FOR REVIEW DISMISSED in part and DENIED in part.**